## AFFIDAVIT OF SPECIAL AGENT KAREL MATYSKA IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Karel Matyska, having been duly sworn, do hereby depose and state as follows:

### Agent Background

1.  I am a Special Agent ("SA") with the United States Department of Treasury Inspector General for Tax Administration ("TIGTA") and have been employed with TIGTA since November 2019. I am currently assigned to the TIGTA Northeast Field Division, Boston, Massachusetts. As a TIGTA SA, I am charged with investigating threats made to the Internal Revenue Service ("IRS"), impersonation of the IRS, and other internal and external attempts to corrupt or interfere with the administration of Internal Revenue laws. Prior to becoming a SA with TIGTA, I was employed as a SA with the Department of Homeland Security ("DHS") – Homeland Security Investigations ("HSI") for more than twelve (12) years. As an HSI SA, I was responsible for conducting federal criminal investigations involving narcotics smuggling, money laundering, and human smuggling and trafficking.

2.  I have received extensive training on investigating federal crimes both in the classroom and on-the-job. I have a Bachelor of Science degree in Finance from Saint Louis University and a Master of Business Administration degree from Babson College. I am a graduate of the Criminal Investigator Training Program, TIGTA Special Agent Basic Training, and HSI Special Agent Training Program at the Federal Law Enforcement Training Center.

3.  I have directed and participated in investigations involving violations of Title 18, Title 21, and Title 8 of the United States Code. During my investigations, I have executed over 100 criminal arrests, seized evidence of violations of law, and identified and seized millions of dollars in criminal proceeds.

## Purpose of Affidavit

4.     I am currently investigating Adley Bernadin ("Bernadin") and others in connection with various suspected federal criminal offenses, including, but not limited to, 18 U.S.C. §§ 371 (Conspiracy), 641 (Theft of Government Funds), 1343 (Wire Fraud), 1344 (Bank Fraud) and 1956 (Money Laundering).

5.     As set forth below, I have probable cause to believe that Bernadin obtained a Paycheck Protection Program ("PPP") loan for the purported company, La Salette Angel Home Care LLC, via fraudulent means. This affidavit is being submitted in support of a criminal complaint charging Bernadin with violating 18 U.S.C. § 1343 and in support of an arrest warrant for Bernadin.

6.     This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint.

## Probable Cause

### Overview of Paycheck Protection Program

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to millions of Americans suffering the economic effects of the COVID-19 pandemic.

8.     As part of the CARES Act, the United States Congress initially authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through the PPP. In or around April 2020, Congress authorized more than $300 billion in

additional PPP funding.

9. In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications. In the PPP loan application, the small business, through its authorized representative, had to state, among other things, its (i) number of employees and (ii) average monthly payroll expenses. These figures were used to calculate the amount of a PPP loan the business was eligible to receive. In addition, businesses applying for a PPP loan had to provide documentation of their payroll expenses.

10. A PPP loan application had to be processed by an authorized Small Business Administration ("SBA") lender. If a PPP loan application was approved, the participating lender funds the PPP loan using its own monies, which were 100 percent guaranteed by the SBA. Data from the application, including information about the borrower, the total loan amount, and the listed number of employees, would have been transmitted by the lender to the SBA in the course of processing the loan.

11. PPP loan proceeds had to be used by the business on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these permissible expenses within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

**Relevant Individuals and Entities**

12. Bernadin is a resident of Stoughton, Massachusetts. On his Massachusetts driver's license, he listed his residence as a home on Westwood Road in Stoughton (the

"Stoughton Address I"). Based on my review of records maintained by the Norfolk Registry of Deeds, I understand that Bernadin owns the Stoughton Address I.

13. Maryse Doxy ("Doxy") is a resident of Stoughton, Massachusetts. She has listed her home as a different residence on Westwood Road in Stoughton (the "Stoughton Address II"). She is believed to be Bernadin's partner or wife. Based on my review of records maintained by the Norfolk Registry of Deeds, I understand that Bernadin also owns the Stoughton Address II. Based on a review of open-source records, Doxy appears to have secured a "Certified Nurse Aide" license in 2005 that expired in 2009.

14. La Salette Angel Home Care LLC ("La Salette") was a purported home health care business. Bernadin incorporated the business with the Massachusetts Secretary of State on June 27, 2017. Bernadin listed the principal office for the business as the Stoughton Address I and himself as the manager and resident agent. Doxy was listed as the "Soc Signatory." La Salette was dissolved on December 10, 2020 for "business reason [sic]."

15. Adley Electric LP was registered with the Massachusetts Secretary of State on February 21, 2014. The business was dissolved on June 30, 2017.

16. Adley Electric LLC was incorporated on June 9, 2020. Bernadin is listed as the resident agent and "Soc Signatory." Maryse D. Bernadin is listed as the manager. The location of the principal office is listed as a PO Box address in Stoughton, and the location where the corporate records will be maintained is listed as the Stoughton Address II.

17. Northeast Bank is based in Maine and insured by the Federal Deposit Insurance Corporation ("FDIC"). It was an approved lender of PPP loans.

18. MountianOne Bank is based in Massachusetts and insured by the FDIC. It was an approved lender of PPP loans.

4

## Overview of the Scheme

19.     Between April and May 2020, Bernadin submitted two successful PPP applications. On or about May 2, 2020, Bernadin submitted a signed, final application to Northeast Bank seeking a loan of $419,833 for La Salette and approximately two days later, on or about May 4, 2020, Bernadin submitted a signed, final application to MoutnainOne Bank for Adley Electric LP seeking a loan of $110,000. Both PPP applications were approved.[1]

20.     As outlined below, both PPP applications and their respective supporting documents contained materially false representations. Based on my training and experience, I believe that Bernadin fraudulently inflated information about both La Salette and Adley Electric's employees and payroll expenses in order to obtain funds.

21.     After receiving the PPP funds for La Salette and Adley Electric, between May and August 2020, Bernadin distributed the proceeds to the same set of individuals via purported "payroll" checks. These payments included, over $135,000 to his wife or partner, Doxy, over $39,000 to a then sixteen-year-old student who appears to have lived at the same address as Bernadin, and over $100,000 to two individuals that appear to have lived at the Stoughton Address II. Bernadin also used the PPP funds to make mortgage and tax payments.

## Adley Electric LP PPP Loan

22.     On or about May 4, 2020, Bernadin submitted a signed, final PPP application on behalf of Adley Electric LP to MountainOne Bank in the amount of $110,000. Bernadin submitted

---

[1] In 2021, Bernadin submitted a "Second Draw Borrower Application" of Adley Electric LLC to MountainOne bank. The application was not accepted by MountainOne bank because Bernadin did not provide all of the requested documentation before the close of the application period.

this signed application approximately two days after submitting the signed PPP application for La Salette described below.

23. Bernadin represented that he maintained 100% ownership over the business and listed a PO Box in Stoughton, Massachusetts as the "Business Address." Bernadin listed the EIN xx-xxx1704 for Adley Electric LP and represented that the business was a "partnership."

24. Bernadin also represented that Adley Electric LP had three employees and an average monthly payroll of $44,000. He identified the "purpose of the loan" as "payroll."

25. In support of his PPP application, Bernadin provided a purported payroll summary for 2019 listing the following five employees: Bernadin, Doxy, C.C., M.P., and I.D.[2] In the purported payroll summary, he represented that Adley Electric LP paid $458,375 in total payroll for 2019. Bernadin did not provide any tax returns for Adley Electric LP in his PPP application.

26. On May 4, after having approved the PPP loan, MountainOne deposited $110,000 into the Adley Electric LP account at MountainOne (the "MountainOne Account"). Based on the account opening documents, Bernadin created this business checking account on March 17, 2017. Bernadin was the only authorized signer for the MountainOne Account. In connection with the account opening, he provided a different EIN for Adley Electric (xx-xxx7170) than the EIN (xx-xxx1704) that he provided for Adley Electric in the PPP application.

### Misrepresentations in the Adley Electric LP PPP Application

27. Based on my review of the MountainOne Account and the investigation to date,

---

[2] In the first month listed on the purported payroll summary, Bernadin included D.D. and not I.D. The identities of these individuals are known to law enforcement; however, at this stage in the investigation, I have chosen to use their initials to protect their privacy.

Bernadin does, in fact, appear to be an electrician. For example, he has received checks that appear to have been for electrical work provided. Similarly, Bernadin has incurred expenses, such as purchases at Home Depot, that would appear to be consistent with electrical work.

28. However, bank statements from the MountainOne Account do not reflect the payroll activity represented on the MountainOne PPP application. In 2019 and 2021, Bernadin only issued two checks that listed "payroll" on the memo line.[3] Additionally, from January 1, 2019 through May 1, 2020 there were only two months where the debits for all expenses totaled at least $44,000 (the amount of monthly payroll represented in the MountainOne PPP application).[4] On April 30, 2020, shortly before receiving the PPP loan, the balance for the MountainOne Account totaled $13,378.75

29. In the payroll summary report that Bernadin included in his PPP application for Adley Electric LP, Bernadin listed the same individuals that, as described below, he listed in the La Salette payroll summary report or that he paid using proceeds from the La Salette PPP loan. Based on my training and experience and the investigation to date, I have probable cause to believe that of the individuals listed, at the very least, I.D. (a then sixteen-year-old student) and C.C. (who appears to have been working in home health services in 2019), were not working for Adley Electric LP during 2019 or 2020.

30. In connection with the investigation, I have also reviewed a 1040 Schedule C filed by Bernadin for Adley Electrical LLC with EIN xx-xxx7170. The return is for tax year 2019. On

---

[3] On September 9, 2019, Bernadin issued a $3,000 check to Doxy for "Regular Week Pay." Bernadin issued several checks to himself throughout 2019. Additionally, on February 19, 2021, Bernadin issued a $2,000 check to Doxy for "Payroll."

[4] Adley Electric LP also maintained an account at Bank of America during the relevant time period. There do not appear to have been any checks to the purported Adley Electric employees issued from this account that list "payroll."

the return, Bernadin represented that his gross receipts amounted to $450,905. He also represented that his total expenses (including, among other things, insurance, car and truck, and legal) amounted to $337,364. Notably, all of the combined expenses are less than the purported payroll-- $458,375—for Adley Electric in 2019 that Bernadin represented in his PPP application.

31. Finally, I have also determined that the EIN (xx-xxx1704) listed on the Adley Electric LP PPP application is registered to Charls Restaurant and was created on August 8, 2010. Accordingly, contrary to Bernadin's representation, Adley Electric LP with EIN xx-xxx1704 could not have been in operation and paid employees and payroll taxes prior to February 15, 2020.

32. In sum, while Bernadin appears to be an actual electrician with an actual company, I have probable cause to believe that he did not engage in the amount of business represented on his PPP application. Bernadin may have been entitled to a PPP for his electrical business, but he fraudulently inflated his payroll in order to obtain money to which he was not entitled.

### Misuse of the Adley Electric LP PPP Funds

33. Between May 6, 2020 and July 9, 2020, Bernadin issued checks from the MountainOne Account listing "Payroll" on the memo line to four individuals: Bernadin, Doxy, C.C, and I.D. In all, these checks totaled over $85,000. During this same time-period, Doxy, C.C., and I.D. also received "payroll" checks in connection with the La Salette PPP application.

34. In all, Bernadin issued nine checks totaling almost $50,000 to himself, ten checks totaling over $22,000 to C.C., five checks totaling over $9,500 to Doxy, and five checks totaling over $7,000 to I.D. On July 6, 2020, Bernadin also issued a check from the MountainOne Bank to the Town of Stoughton for $795. On the memo line, Bernadin wrote "Tax Pay [Stoughton Address II] [sic]."

35. Bernadin deposited eight of the checks that he issued to himself in the Adley Electric

LP account at Bank of America.

### La Salette Angel Home Care LLC PPP Application

36. On or about May 2, 2020, Bernadin submitted a signed, final application on behalf of La Salette Angel Home Care LLC ("La Salette") for a PPP loan to Northeast Bank in the amount of $419,833.00.

37. In the application, Bernadin represented that he maintained 100% ownership over the business, listed a Yahoo email account (the "Yahoo Account") that included his first name as his "Email Address," and the Stoughton Address I as the "Business Address." Bernadin listed the EIN for La Salette as xx-xxx7422.

38. On the PPP application, Bernadin claimed that La Salette had four employees and an average monthly payroll of $175,200. He identified the "purpose of the loan" as "payroll." Additionally, Bernadin certified that the business "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes…"

39. In support of his representations in the PPP application, Bernadin provided an unsigned Form 940 for 2019 for La Salette. The Form 940 is used by employers to report annual Federal Unemployment Tax Act ("FUTA") tax to the IRS. In the unsigned return, Bernadin listed total 2019 payroll for all employees as $2,102,400.

40. During the application process, in response to a request for supporting documents, such as a Form 940, on April 28, 2020, Bernadin sent an email from the Yahoo Account to a loan processor[5], stating, "[t]he problem that i am having right now is that I can't provide Tax

---

[5] The processor worked at RedRidge Finance Group, LLC ("RedRidge"). I understand that RedRidge worked with another company, ExWorks Capital, to collect the necessary documentation for the PPP application to Northeast Bank.

9

documents right now because my accounting is at the hospital with the Covid 19 Virus and he is on ICU right they are not even sure if he is going to make it [sic]." Later in the email chain, Bernadin wrote, "Ok I am going to try my best to complete the PPP base on the information I usually provide my accounting because I don't have the actual copy because he is the one who usually do it for me [sic]." As noted above, Bernadin provided an unsigned purported Form 940 in support of his PPP application.

41. Bernadin also provided a spreadsheet of 2019 payroll listing five purported La Salette employees: Doxy, C.C., M.P., D.D., and L.P.[6] The spreadsheet listed the amount purpotedly paid to each individual during each month in 2019. In all, Bernadin represented that La Salette paid $538,860 to its purported employees in 2019.

42. On or about May 8, 2020, after having approved the PPP loan application, Northeast Bank wired $419,833 to an account maintained by La Salette at Santander Bank (the "Santander Account").[7] Bernadin opened the Santander Account on November 13, 2017 and was the only authorized signer.

43. On September 29, 2020, Santander returned the remaining funds ($135,237) in the Santander Account to Northeast Bank due to suspected fraud related to the PPP loan.

**Misrepresentations in the La Salette PPP Application**

44. Based on my training and experience and my review of records in this case, I

---

[6] The identities of these individuals are known to law enforcement; however, at this stage in the investigation, I have chosen to use their initials to protect their privacy.

[7] Based on my training and experience and the investigation to date, I have reason to believe that this wire affected interstate commerce. Notably, Santander processed this wire through its servers in Queretaro, Mexico.

believe that Bernadin made materially false representations to Northeast Bank in order to obtain the PPP funds.

45. I have reviewed bank records for the Santander Account that do not reflect the payroll activity represented by Bernadin on the Northeast Bank PPP application or the purported IRS Form 940.[8] In 2019, there were no monthly statements from the Santander Account that reflected account balances that would support the average monthly payroll ($175,200) reflected in the Northeast Bank PPP application. At no point in 2019 did the Santander Account have a balance larger than $50,000. Moreover, in 2019, there were no checks issued from the Santander Account to any of the purported La Salette employees that listed payroll, and even if every one of the transfers from 2019 was deemed payroll, it would not come close to the payroll amount claimed in the PPP application.[9]

46. Along these lines, the bank records for the Santander Account do not reflect ongoing business activity. More specifically, from August 1, 2019 through September 29, 2020, there was only one deposit into the Santander Account: the funded PPP loan from Northeast Bank. Before receiving the PPP loan, the Santander Account balance was $86.67.

47. In connection with the investigation, I have determined that Bernadin did not file the unsigned Form 940 for 2019 that he included in the La Salette PPP application. The IRS has confirmed that the listed EIN (xx-xxx7422) for La Salette on the PPP application was created in

---

[8] Notably, the total payroll activity for 2019 represented in the PPP application is internally inconsistent. In the unsigned Form 940, Bernadin listed total payroll as $2,102,400, whereas in the purported payroll summary, he listed it as $538,860.

[9] From January 2019 through August 2019, Bernadin sent several wire transfers to an account controlled by Doxy at Santander. Bernadin also issued one $3,000 check to Doxy which did not contain an entry in the memo line.

April 2020. This creation date was less than one month prior to the submission of the final, signed PPP application. Accordingly, contrary to Bernadin's representation in his PPP application, La Salette with EIN xx-xxx7422 could not have been in operation and paid employees and payroll taxes prior to February 15, 2020. Indeed, La Salette could not have submitted a Form 940 for 2019 with EIN xx-xxx-7422 as that number had not been issued to it at that time. The IRS has confirmed that it does not have any tax returns on file that were submitted by La Salette.

48. In connection with the investigation, I have also determined that several of the purported employees listed on the payroll summary appear to have a personal connection to Bernadin. In addition to the fact that Doxy is believed to Bernadin's partner or wife, I have reviewed records reflecting that Doxy, C.C., and M.P. have listed the Stoughton Address II as their residence. Based on my review of publicly available real estate websites, I similarly understand that the Stoughton Address II is a small 600 square foot home with two bedrooms and one bathroom.

  a. Doxy listed the Stoughton Address II as her residence on her Massachusetts Driver's License as well as on a Santander account signature card dated May 18, 2020.

  b. C.C. has also listed the Stoughton Address II on his Massachusetts Driver's License as well as on a Santander account signature card dated April 5, 2019. Additionally, in connection with my review of C.C.'s Santander account, I observed that during 2019 (the purported time-period that C.C. worked at La Salette and Adley Electric), he received what appear to be direct deposits from two different home health care or nursing companies.

  c. I have reviewed a signed lease agreement between Bernadin and M.P. whereby M.P. agreed to lease the "upper level" of the Stoughton Address II. The contract is dated September 1, 2018. I have also reviewed an email from December 15, 2020,

where Bernadin explained to a credit agency that M.P. has consistently paid his rent for the Stoughton Address II.

    d.    Based on the investigation to date, I have been unable to identify any additional information as to L.P. and D.D. (although D.D. shares the same last name as Doxy).

49.    Additionally, despite listing himself as the owner of La Salette on the PPP application, Bernadin did not make any payments to himself or list himself as a purported employee on the payroll summary report.

50.    In sum, I am aware of no financial records that support Bernadin's claim on the PPP application that La Salette had four employees and monthly payroll expenses of approximately $175,200. Accordingly, I have probable cause to believe that Bernadin fraudulently misrepresented employee and payroll information in order to obtain a PPP loan.

## Misuse of the La Salette PPP Funds

51.    On or about May 8, 2020, Northeast Bank deposited $419,833 in PPP funds into the Santander Account. Bank records indicate that Bernadin used the funds (until the remaining balance was returned to Northeast Bank) to make home mortgage payments and to write checks to individuals with whom he appears to have a personal relationship.

*Mortgage Payments*

52.    I have reviewed mortgage records from Wells Fargo and determined that between at least, January 1, 2019 through the November 2021, Bernadin appears to have carried a mortgage for the Stoughton Address I. Between May 10 and September 11, 2020, Bernadin paid over $15,000 from the Santander Account to Wells Fargo in mortgage payments. In all, Bernadin made thirteen payments to Wells Fargo. Prior to May 10, Bernadin had not made any

13

mortgage payments from the Santander Account and after the return of the funds from the Santander Account to Northeast Bank, Bernadin did not make any additional mortgage payments from the Santander Account.

***Purported Payroll Checks***

53. After receiving the PPP funds, Bernadin issued over $250,000 in checks for purported "payroll" to five different individuals: Doxy, C.C., M.P., L.P., and I.D. All of the checks listed "payroll" in the "memo" line. All checks were negotiated between approximately May 21, 2020 and August 20, 2020.

54. Nearly all of the checks issued to C.C., M.P., and L.P. were cashed.[10] There were approximately 18 checks issued to M.P that ranged between $3,000 and $3,600. There were approximately 2 checks issued to L.P. for $1,340 and $2,010. There were approximately 16 checks issued to C.C. that ranged between $2,040 and $2,736.

55. The checks issued to Doxy and I.D. were either cashed or deposited into three bank accounts created by Doxy shortly after Northeast Bank issued the PPP loan to La Salette. There were approximately 17 checks issued to Doxy that were all for $7,500. There were approximately 16 checks issued to I.D. that were all for $2,040. Doxy created the following accounts to receive PPP funds:

    a. First, on May 18, 2020, Doxy opened a checking account ending in x8591 and savings account ending x3757 in her own name. Doxy listed her address as the Stoughton Address II and her occupation as a "Nurse."

---

[10] Notably, one of the checks issued to M.P. appears to have been endorsed by I.D. and then cashed. One of the checks issued to C.C. was partially deposited into the account ending x8575 (described below).

  b. Second, on May 19, 2020, Doxy and N.D. opened a student value checking account ending in x8575 at Santander. Doxy and N.D.[11] are both listed as owners of the account and the "Account Address" is listed as the Stoughton Address I. N.D. was born on xx/xx/2003 and was sixteen years old at the time of the account opening. N.D listed her occupation as "Student-not employed."

  c. Third, on May 20, 2020, Doxy and S.B. opened a "Youth Savings" account ending in x6581 at Santander Bank. S.B.'s listed address is the Stoughton Address I. Doxy is listed as the "custodian" and S.B. is the ultimate beneficiary. S.B. was born on xx/xx/2009 and was eleven years old at the time of the account opening.

  d. As of February 28, 2021, the balance for all three of these accounts was zero.

56. Several of the checks, especially those addressed to Doxy and I.D., appear to have been deposited in a coordinated manner. The following checks were deposited around roughly the same time and at the same Santander bank branch:

  a. On June 5, 2020, at approximately 11:54 a.m., a $7,500 check issued to Doxy was negotiated in the following manner: $6,450 was received as cash and $1,050 was deposited in the account ending in x8591. At approximately 12:02 p.m., at the same teller and bank branch, a $2,040 check to I.D. was cashed in its entirety.

  b. On June 11, 2020, at approximately 10:56 a.m., a $7,500 check to Doxy was negotiated in the following manner: $6,000 was received in cash and $1,500 was deposited into the account ending in x8591. At approximately 11:00 a.m., at the

---

[11] I understand I.D. and N.D to be the same person. The D in both names is the same last name. In endorsing the checks, I.D. wrote the initial "N" prior to writing out the rest of her name (I.D.).

same teller and bank branch, a $2,040 check to I.D. was negotiated in the following manner: $1,640 was received in cash and $400 was deposited into the account ending in x8575.

c. On July 2, 2020, at approximately 12:43 p.m., a $7,500 check to Doxy was negotiated in the following manner: $6,000 was provided in cash, $1,000 was deposited into the account ending in x3757, and $500 was deposited into the account ending in x8591. At approximately 12:49 p.m., at the same teller and bank branch, a $2,040 check to I.D. was negotiated in the following manner: $1,700 was received in cash, $200 was deposited into the account ending in x8575, and $100 was deposited into account ending x6581. At approximately 1:10 p.m., at the same teller and bank branch, a $3,600 check to M.P. was cashed in its entirety.

d. On July 23, 2020, at approximately 3:10 p.m., a $7,500 check to Doxy was negotiated as follows: $6,000 was received in cash, $1,000 was deposited into the account ending in x3757, and $500 was deposited into account ending in x8591. At approximately 3:30 p.m., at the same teller and bank branch, a $3,600 check to M.P. was cashed in its entirety.

57. In sum, I have probable cause to believe that these payments by Bernadin on behalf of La Salette do not reflect legitimate payroll activity. Bernadin paid over $32,000 to I.D., a sixteen-year-old student with the same listed address as himself, over $150,000 in roughly four months to his wife or partner, over $54,000 to M.P., who appears to have been his tenant, and finally, over $30,000 to C.C., who appears to have worked for different health care companies during this time and to have similarly listed his residence as property owned by Bernadin.

## Conclusion

58.     Based on the information described above, and my training and experience, I have probable cause to believe that: on or about May 8, 2020, Bernadin, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit: a $419,833 wire transfer from Northeast Bank to Bernadin at the La Salette Santander Account, in violation of Title 18 Untied States Code, Section 1343.

Sworn to under the pains and penalties of perjury.

_____
Karel Matyska
Special Agent
U.S. Treasury Inspector General for Tax Administration

Subscribed to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on March 16, 2022

_____
HON. MARIANNE B. BOWLER
United States Magistrate Judge